FILED
JAN 2 1 2016
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

SEALED

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* THOMAS A. FLOREN, *Relator*,<br><br>Plaintiff,<br><br>v.<br><br>VIBRA REHABILITATION HOSPITAL OF EL PASO, LLC a/k/a HIGHLANDS REGIONAL REHABILITATION HOSPITAL; VIBRA HEALTHCARE, LLC; ELMCROFT SENIOR LIVING, INC.; and KEVIN SANDBERG, M.D.,<br><br>Defendants. | Civ. Action No. SA16CA0058 FB<br><br>**COMPLAINT FOR DAMAGES UNDER THE FALSE CLAIMS ACT**<br><br>JURY TRIAL DEMAND<br><br>FILED IN CAMERA AND UNDER SEAL UNDER 31 U.S.C. § 3730<br><br>DO NOT ENTER INTO PACER<br>DO NOT PLACE IN PRESS BOX |

## INTRODUCTION

1.  In this lawsuit, Relator Thomas Floren alleges that Vibra Rehabilitation Hospital of El Paso, LLC a/k/a Highlands Regional Rehabilitation Hospital ("Highlands Regional"); Vibra Healthcare, LLC ("Vibra"); Elmcroft Senior Living, Inc. ("Elmcroft") and Kevin Sandberg, M.D. ("Dr. Sandberg") (collectively, "Defendants") violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, by engaging in a scheme to cause the submission of false claims to Medicare for inpatient rehabilitation services that were not eligible for payment under the Medicare program. Under Medicare's regulations, inpatient rehabilitation facilities, such as Highlands Regional, receive a predetermined amount of payment for inpatient services furnished to a Medicare beneficiary. Eligibility for this payment is predicated on the requirement that at the time of a patient's admission, there is a reasonable expectation that a rehabilitation physician will conduct face-to-face visits with the beneficiary at least three times per week throughout the beneficiary's

stay at the facility. Failure to comply with this requirement renders the inpatient services ineligible for Medicare payment. Internal audits revealed that Highlands Regional was zero percent compliant with the three-visits-per-week requirement. Vibra, the management company that ran Highlands Regional, and Dr. Sandberg, Highlands Regional's medical director, were fully aware of the lack of compliance, but failed to take adequate corrective measures. Instead, Highlands Regional (which was owned during a portion of the relevant timeframe by Elmcroft), with the support of Vibra and Dr. Sandberg, continued to admit Medicare patients for inpatient rehabilitative services—despite the fact that there was no reasonable expectation of compliance with the three-visit-per-week rule—and then submit false claims to Medicare that were ineligible for payment.

## PARTIES

2. Relator Thomas Floren is a citizen of the United States and resides in Dona Ana County, New Mexico. Mr. Floren was employed by Highlands Regional as the Director of Business Development from approximately April 2013 to July 2015. The facts averred herein are based upon the direct, personal observations of Mr. Floren and documents in his possession. Mr. Floren is not aware of any public disclosure of the facts or information contained in this complaint.

3. Mr. Floren provided the United States Attorney for the Western District of Texas and the Attorney General of the United States a full disclosure of substantially all the material facts, as required by 31 U.S.C. § 3730(b)(2), prior to filing this Complaint.

4. Defendant Vibra Rehabilitation Hospital of El Paso, LLC a/k/a Highlands Regional Rehabilitation Hospital is a foreign corporation with its headquarters in Mechanicsburg, Pennsylvania. Highlands Regional's primary operations are located in El Paso, Texas. Highlands

Regional can be served with process by serving its registered agent, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5. Defendant Vibra Healthcare, LLC is a foreign corporation with its headquarters in Mechanicsburg, Pennsylvania. Vibra can be served with process by serving its registered agent, Corporation Service Company at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6. Defendant Elmcroft Senior Living, Inc. is a foreign corporation with its principal office in Louisville, Kentucky. Elmcroft can be served with process by serving its registered agent, Corporation Service Company at 421 West Main Street, Frankfort, Kentucky 40601.

7. Defendant Kevin Sandberg, M.D. is the Medical Director at Highlands Regional. He is a resident of and transacts business in El Paso, Texas. Dr. Sandberg can be served with process at his primary place of business, which is located at 1393 George Dieter Drive, Suite A, El Paso, Texas 79936.

## JURISDICTION AND VENUE

8. This action arises under the False Claims Act, 31 U.S.C. § 3729 et seq. This Court has jurisdiction over this case under 31 U.S.C. § 3732(a) and 3730(b). This Court also has jurisdiction under 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

9. At all times material to this Complaint, Defendants regularly conducted substantial business within the State of Texas, and Highlands Regional and Dr. Sandberg maintained permanent employees and offices in the State of Texas. Defendants are thus subject to personal jurisdiction in Texas.

10. Venue is proper in this district under 31 U.S.C. § 3732(a) because Defendants transact business in this district.

## THE MEDICARE PROGRAM

11. In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare program. Medicare is a health financing program for the elderly. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. 42 U.S.C. §§ 426, 426A. Medicare is administered by the Center for Medicare and Medicaid Services, which is part of the Department of Health and Human Services.

12. Medicare is not permitted to pay for any expense that is not "**reasonable and necessary** for the diagnosis and treatment of illness or injury." 42 U.S.C. § 1395(a)(1)(a) (emphasis added). Regulations, national coverage determinations, and local coverage determinations specify services that are covered as medically reasonable and necessary.

13. Medicare is divided into four parts. Medicare Part A is hospital insurance. Part A provides coverage for inpatient hospital stays, care in a skilled nursing facility, hospice care, and, relevant to this action, treatment in an inpatient rehabilitation facility. In its policies and regulations, Medicare commonly refers to an inpatient rehabilitation facility as an "IRF."

14. Medicare reimburses inpatient rehabilitation facilities under the prospective payment system. 42 C.F.R. § 412.622 (a)(1). Under the prospective payment system, an inpatient rehabilitation facility receives a predetermined amount for each discharged Medicare beneficiary. *Id.* The predetermined amount paid for each patient is based on a number of criteria established by the Medicare program. *Id.* at § 412.622 (a)(2).

15. "In order for an IRF claim to be considered **reasonable and necessary** under [the Medicare program], there must be a reasonable expectation that the patient meets...the following requirement[] at the time of the patient's admission[:]...physician supervision by a rehabilitation physician, defined as a licensed physician with specialized training and experience in inpatient

rehabilitation. The requirement for medical supervision means that **the rehabilitation physician must conduct face-to-face visits with the patient at least 3 days per week throughout the patient's stay in the IRF** to assess the patient both medically and functionally, as well as to modify the course of treatment as needed to maximize the patient's capacity to benefit from the rehabilitation process." *Id.* at 412.622 (a)(3)(iv) (emphasis added).

## FACTS

16. Highlands Regional is an independent rehabilitation facility located at 1395 George Dieter Drive, El Paso, Texas. The patient base of Highlands Regional consists primarily of senior citizens, most of whom are insured by the Medicare program. In fact, approximately three-quarters of Highlands Regional's revenue comes from the Medicare program. For example, in the month ending on May 31, 2015, Highlands Regional's total revenue was $1,240,026, of which $924,245 was paid by Medicare for inpatient rehabilitative services. In that same month, Highlands Regional admitted 68 patients, 43 of whom were Medicare beneficiaries.

17. Dr. Sandberg is the Medical Director at Highlands Regional. He is also the physician responsible for conducting the vast majority of the face-to-face physician visits required under Medicare's regulations. In addition to his role at Highlands Regional, Dr. Sandberg runs his own independent medical clinic in a facility immediately adjacent to Highlands Regional. The address for Dr. Sandberg's clinic is 1393 George Dieter Drive, El Paso, Texas.

18. Vibra managed the operations of Highlands Regional on behalf of Elmcroft, the owners of Highlands Regional, from approximately 2012 to August 2015. Around August 2015, Vibra purchased Highlands Regional from Elmcroft. Vibra continued to manage the operations of Highlands Regional after the purchase.

19. Mr. Floren began working at Highlands Regional in or around April 2013. He was hired as the Director of Business Development. Mr. Floren was responsible for cultivating the referral base for Highlands Regional. Mr. Floren supervised a team of five Clinical Liaisons who called on potential referring physicians in and around El Paso, Texas to promote the quality of care provided by Highlands Regional. Mr. Floren was told by Tracy Penny, his supervisor at the time, that a key factor distinguishing Highlands Regional from other inpatient rehabilitation facilities in the area was that patients received almost daily face-to-face visits from physicians. Mr. Floren and his team promoted this benefit to the physician community in and around El Paso.

20. In fact, daily physician visits was a benefit that Vibra promoted nationally for all of its facilities. Mr. Floren attended three Vibra national sales meetings while he was employed at Highlands Regional. The first was in Mechanicsburg, Pennsylvania, in February 2014, the second was in Hershey, Pennsylvania, in October 2014, and the third was in Las Vegas, Nevada, in February 2015. At each of these meetings, Diane Pierce, Vibra's Senior Vice President for Business Development, and Jeff Clary, Vibra's Vice President of Business Development, told the audience that daily physician visits was a key selling point for Vibra's facilities nationwide.

21. Beginning in January 2014, Mr. Floren was invited to attend Highlands Regional's monthly quality assurance meetings. Helen Carmona (CEO of Highlands Regional), Stella Lazzaro (Highlands Regional's Director of Quality Management), Dr. Sandberg, and several other managers from Highlands Regional regularly attended the monthly meetings, as well. At the first quality assurance meeting that Mr. Floren attended, the participants discussed Highlands Regional's non-compliance with Medicare's requirement that a physician conduct a face-to-face visit with each patient at least three days per week. An audit of the charts indicated that Highlands's Regional was zero percent compliant. This was the first time that Mr. Floren became aware of

Highlands Regional's lack of compliance with this requirement. Because he was told to market frequent face-to-face physician visits as a benefit of Highlands Regional, Mr. Floren was troubled by the fact that the opposite was true. But at first, he was hopeful that Highlands Regional and Vibra would address and fix the problem.

22. During subsequent monthly quality meetings, Mr. Floren learned that Highlands Regional continued to breach the three-visit-per-week rule. In the spring of 2014, Mr. Floren approached Ms. Carmona with his concerns. Ms. Carmona, simply said that she would look into it. Though Ms. Carmona's title was CEO of Highlands Regional, she was a direct employee of Vibra.

23. In early summer of 2014, Jeff Clary visited Highlands Regional. During the visit, Mr. Floren told Mr. Clary that he was concerned by Highlands Regional's lack of compliance. Mr. Clary admitted that it should not be allowed to continue.

24. Around that same time, Linda Johnson, Vibra's Senior Vice President for Health Information Management, paid a visit to the Highlands Regional facility. While Ms. Johnson was there, Mr. Floren informed her about Highlands Regional's continued non-compliance with the three-visit-per-week rule.

25. The following day, Ms. Johnson came into Mr. Floren's office at Highlands Regional and informed him that she had conducted her own independent audit regarding Highlands Regional's non-compliance. She stated that she agreed with Mr. Floren's concern that Highlands Regional was not complying with Medicare's three-visit-per-week requirement. She also stated that she would meet with Dr. Sandberg and Helen Carmona regarding these concerns.

26. Later, Mr. Floren reviewed yet another audit report related to Highlands Regional's non-compliance. The report reflected a review of 10 charts a month for several months in 2014.

The report indicated that Highlands Regional was 0% compliant with the three-face-to-face-physician-visit-per-week rule in January, February, March, April, and May of that year, and 10% and 30% compliant in July and August, respectively.

27. In August 2014, Rob Torgusen, Vibra's Regional Director of Business Development, visited Highlands Regional to meet with Mr. Floren. During the meeting, Mr. Floren expressed his concerns to Mr. Torgusen about Highlands Regional's non-compliance. Mr. Torgusen said that Vibra and Highlands Regional had other things to worry about at the time and essentially brushed Mr. Floren's concerns aside.

28. On more than one occasion since that time, Mr. Floren heard Ms. Carmona admit that Highlands Regional would have to write a big check to Medicare if it ever got audited. Despite the fact that the CEO of Highlands Regional was aware that the facility had received payments from Medicare to which it was not entitled, Defendants made no efforts to self-report the lack of compliance or pay the money back.

## **VIOLATIONS OF THE FALSE CLAIMS ACT**
### AGAINST ALL DEFENDANTS
*False Presentment*—31 U.S.C. § 3729(a)(1)(A)
*False Statements*—31 U.S.C. § 3729(a)(1)(B)
*Conspiracy*—31 U.S.C. § 3729(a)(1)(C)

29. Relator, acting in the name of and on behalf of the United States, restates and realleges the allegations contained in paragraphs 1 – 28 above as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

30. This is a claim for actual damages, statutory damages, treble damages, and penalties under the False Claims Act, 31 U.S.C. § 3729 *et seq*.4, as amended.

31. By virtue of the acts described herein, Defendants knowingly (1) presented, or caused to be presented, to officers, employees, or agents of the United States under the Federal Payer Programs, false or fraudulent claims for payment or approval; (2) made, used, and caused to be made and used false records and statements material to the Government's decision to pay claims; and (3) conspired (a) to present, or cause to be presented, to officers, employees, or agents of the United States under the Federal Payer Programs, false or fraudulent claims for payment or approval, and (b) to make, use, and cause to be made and used false records and statements material to the Government's decision to pay claims. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard of whether the claims were true or false.

32. Each claim for reimbursement to Medicare for inpatient rehabilitation services provided by Highlands Regional was false because at the time of the patient's admission there was no reasonable expectation that a rehabilitation physician would conduct face-to-face visits with the patient at least 3 days per week throughout the patient's stay, as required by Medicare regulations in order for the claim to qualify as reasonable and necessary.

33. Unaware of the falsity of the claims made or caused to be made by Defendants, and in reliance on the truthfulness and accuracy of Defendants' certifications, the United States paid and continues to pay on the claims that would not have been paid but for Defendants' wrongful actions and omissions.

34. The United States has been damaged, and continues to be damaged, in substantial amounts to be determined at trial. The Federal Payer Programs have paid significant amounts for the services based on Defendants' making or causing to be made false claims for inpatient rehabilitation services that are not reasonable and necessary.

## PRAYER

WHEREFORE, Relator prays that this District Court enter judgment on behalf of Relator and against Defendants as follows:

a. Actual and statutory damages in an amount to be established at trial;

b. Three (3) times the amount of actual damages suffered by the United States Government as a result of each Defendant's conduct;

c. Civil penalties for each false claim or false statement as provided by law;

d. Relator be awarded from the Common Fund created as a result of this litigation (1) of not less than 25% of the total proceeds recovered by settlement or judgment if the Government intervenes before or at the time this case is unsealed; or (2) of not less than 30% of the total proceeds recovered by settlement or judgment if the Government does not intervene or intervenes after this case is unsealed;

e. Relator be awarded all costs and expenses of this litigation, including reasonable attorneys' fees and costs of court;

f. Pre-judgment and post-judgment, as appropriate, interest at the highest rate allowed by law; and

g. Any other relief that this Court deems appropriate.

## DEMAND FOR A JURY TRIAL

Relator hereby demands a jury trial.

Dated: January 21, 2016

Respectfully submitted,

*/s/ Christopher S. Hamilton*

Christopher S. Hamilton
State Bar No. 24046013
chamilton@standlyhamilton.com
Kevin N. Colquitt
State Bar No. 24072047
kcolquitt@standlyhamilton.com

**STANDLY HAMILTON, LLP**
325 N. St. Paul Street, Suite 3300
Dallas, Texas 75201
Telephone: (214) 234-7900
Facsimile: (214) 234-7300

Vivek Grover
State Bar No. 24004679
vivekgrover2001@yahoo.com
711 Myrtle Avenue
El Paso, Texas 79901
Telephone: (915) 838-9355
Facsimile: (915) 351-1817

**ATTORNEYS FOR RELATOR**